

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 15 2004

Michael N. Milby, Clerk of Court

| | |
|---|---|
| ENBRIDGE PIPELINES (EAST TEXAS), L.P. by ENBRIDGE HOLDINGS (TEXAS SYSTEMS), L.L.C. ITS GENERAL PARTNER § § § § § § § V. § § § § INTERNATIONAL PAPER COMPANY § | H-04 1017 CIVIL ACTION NO. JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

ENBRIDGE PIPELINES (EAST TEXAS), L.P. by ENBRIDGE HOLDINGS (TEXAS SYSTEMS), L.L.C., Plaintiff herein, files its Original Complaint complaining of INTERNATIONAL PAPER COMPANY, Defendant, and for cause would show unto the court as follows.

### I.

### PARTIES

1. Plaintiff ENBRIDGE PIPELINES (EAST TEXAS), L.P. ("Enbridge") is a Delaware limited partnership with its principal place of business in Houston, Harris County, Texas. It acts through its general partner ENBRIDGE HOLDINGS (TEXAS SYSTEMS), L.L.C., a Delaware limited liability corporation with its principal place of business in Houston, Harris County, Texas.

2. Defendant INTERNATIONAL PAPER COMPANY ("International Paper") is a New York corporation with its principal place of business in the State of Connecticut. International Paper Company maintains an office in Houston, Harris County, Texas and may be served by serving its registered agent, C.T. Corporation Systems, 1021 Main Street, Suite 1150,



Houston, Texas 77002.

## II.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS exclusive of interest and costs and is between citizens of separate states.

4. Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391 (1) because all or a substantial part of the events giving rise to the Plaintiff's claims occurred in the Southern District of Texas, Houston Division and (2) because the Defendant resides within the Southern District of Texas, Houston Division.

## III.

## FACTS

5. Enbridge is an entity headquartered in Houston, Harris County, Texas. Enbridge is an intrastate pipeline and as such engages in numerous transactions with other entities for the purchase and sale of, amongst other goods, natural gas. In conformity with industry standards, Enbridge buys and sells natural gas resulting from communications with other entities trading in the business regarding the amounts of natural gas purchased or sold monthly. These communications represent the basis of the contractual arrangements between Enbridge and other energy traders and/or buyers. With some of these energy buyers, Enbridge enters into written terms and conditions of sale and purchase that control the telephonic communications.

6. International Paper entered into an agreement ("Base Contract") with Koch Midstream Services Company for the purchase and sale of natural gas on August 3, 2000. Enbridge is Koch Midstream Services Company's successor in interest to the Base Contract. Pursuant to this base contract, Enbridge sold natural gas to International Paper.

7. The Base Contract was a mechanism for short term sales and purchases of natural gas. International Paper would from time to time nominate the amount of natural gas it would need for an upcoming period of time. This nomination would set the contract quantity of natural gas to be delivered and taken by the purchaser for the period covered by the nomination.

8. Paragraph 3.1 of the base contract imposed performance obligations on both parties concerning the contract quantity for a particular transaction. Pursuant to this provision, the Seller (Enbridge) agreed to sell and deliver and Buyer (International Paper) agreed to purchase and receive the contract quantity as set forth in the nomination provided to the Seller. Section 4 of the base contract also provided that if there was an imbalance between the amount of natural gas nominated and the amount of natural gas delivered, the party causing such imbalance by either taking too much natural gas or not taking enough gas would be required to pay the Seller an imbalance charge as that term is defined in Section 2.17 of the base contract.

9. The base contract also made International Paper liable for cover standard as provided in Section 3.2 of the base contract:

> In addition to any liability for Imbalance Charges, which shall not be recovered twice by the following remedy, the exclusive and sole remedy of the parties in the event of a breach of a firm obligation shall be recovery of the following: ....... (ii) in the event of a breach by Buyer on any day(s), payment by Buyer to Seller in an amount equal

>to the difference between the contract quantity and the actual quantity delivered by Seller and received by Buyer for such day(s), multiplied by the positive difference, if any, obtained by subtracting the applicable spot price from the contract price.

10. The price for natural gas sold under the base contract was agreed by the parties to be the price posted on the Reliant East Index plus an adder of $0.085 per MMBtu. For those months when a price was not posted by Platt's Inside FERC's Gas Market Report on the Reliant East Index, the Houston Ship Channel Index was utilized.

11. International Paper breached the contract by either not taking the amount of natural gas it had nominated or by taking in excess of the natural gas it had nominated and refusing to pay Enbridge the imbalance and cover standard amount set forth in the base contract. For instance, in February of 2003, International Paper nominated 11,000 MMBtu. On February 14, 2003 International Paper communicated to Enbridge that it wanted to change its nomination down to 5,500 MMBtu a day. Enbridge, relying upon that nomination and confirmation, sold the position on the remaining 5,500 MMBtu purchased to meet International Paper's nomination. However, International Paper continued to pull up to 11,000 MMBtu through February in contradiction of the confirmed nomination of February 14, 2003 thus causing Enbridge to sustain a loss in the amount of $198,063.35.

12. In March of 2003, International Paper nominated 14,000 MMBtu a day but used only an average of 7,357 MMBtu a day. This failure of International Paper to take the natural gas nominated forced Enbridge to sell this unused portion of natural gas to a third party at a substantial loss. As per the Base Contract, International Paper was billed by Enbridge for the loss between the contract price and the price actually received for the price of the unused natural gas in the amount of $622,181.36 and International Paper has refused to pay this

4

amount, although clearly required by the Base Contract.

In the remaining months from January 2001 through April of 2003, excluding the months of February 2003 and March 2003, Enbridge sustained losses in the amount of $307,726.75 by International Paper not taking the amount of natural gas International Paper nominated in the respective months.

13. International Paper further breached its agreement with Enbridge by failing to pay the agreed upon price and unilaterally attempting to reduce the previously agreed to adder from $0.085 to $0.080 per MMBtu. During the period of time from August 2002 through April 2003, International Paper underpaid Enbridge for natural gas taken by failing to use the agreed pricing, the result of which caused Enbridge an additional loss of $15,798.28.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### COMMON LAW FRAUD

14. Enbridge incorporates by reference the facts and allegations set out in paragraphs 1 through 14 above. Without waiver of any other cause of action set out above, Enbridge asserts a cause of action against the Defendant for fraud.

15. International Paper represented to Enbridge that there were both written and oral agreements between Enbridge and International Paper resulting in the sale of natural gas by Enbridge to International Paper during the time specified in the preceding paragraphs and at the prices agreed to between the parties. These representations by International Paper were false and International Paper knew they were false at the time they were made. Enbridge relied upon the representations of International Paper to its detriment and suffered damages as a result.

5

## SECOND CAUSE OF ACTION: <u>CONVERSION</u>

16. Enbridge incorporates by reference the facts and allegations set out in paragraphs 1 through 15 above. Without waiver of any other cause of action set out above, Enbridge asserts a cause of action against International Paper for conversion.

17. From January 2001 to the present, International Paper has converted natural gas belonging to Enbridge by failing and refusing to pay for the natural gas that was delivered. This conversion was part of a scheme in which International Paper would request an amount of natural gas from Enbridge which would in turn then be delivered to and consumed by International Paper. International Paper would refuse to pay and later claim it was not liable buy for gas bought from Enbridge. As a result of this conversion, Enbridge has suffered damages.

## THIRD CAUSE OF ACTION: <u>UNJUST ENRICHMENT RESULTING FROM MONEY HAD AND RECEIVED</u>

18. Enbridge incorporates by reference the facts and allegations set out in paragraphs 1 through 17 above. Without waiver of any other cause of action set out above, Enbridge asserts a cause of action against Defendant for unjust enrichment resulting from money had and received.

19. International Paper has been unjustly enriched by receiving Enbridge gas for which it was obligated to pay as a direct result of a scheme to misrepresent its intentions regarding its contractual obligations to Enbridge. International Paper refused to pay for gas it requested and caused Enbridge to deliver during the time period made the basis of this suit. Because of these actions, International Paper has been unjustly enriched.

## FOURTH CAUSE OF ACTION
### THEFT

20. Enbridge incorporates by reference the facts and allegations set out in paragraphs 1 through 19 above. Without waiver of any other cause of action set out above, Enbridge asserts a cause of action against Defendant for theft.

21. International Paper's actions in obtaining the natural gas of Enbridge constitute theft as defined in § 31.01, 31.02, and 31.03 of VTCA Penal Code by engaging in deception by creating or confirming by words or conduct a false impression of law or fact that International Paper knew not to be true that affected the judgment of Enbridge and by failing to correct that impression and by appropriating property of Enbridge by exercising control over funds due Enbridge all as defined in VTCA Penal Code § 31.01.

## FIFTH CAUSE OF ACTION:
### BREACH OF CONTRACT

22. Enbridge incorporates by reference the facts and allegations set out in paragraphs 1 through 21 above. Without waiver of any other cause of action set out above, Enbridge alternatively asserts a cause of action against Defendant for breach of contract.

23. Enbridge had a contract with the Defendant (a copy of which is attached as Exhibit "A"). The Defendant breached the contract by failing to pay for nominations and/or failing to pay for the contractual penalties, cover charges and other clauses imposing liability upon International Paper. Enbridge has requested the payment of the amount of monies to which it is entitled under its contract yet International Paper has failed and refused therefore breaching its obligations. All conditions precedent to Plaintiff's right to recovery have occurred, been performed, excused or waived.

24. As a direct and proximate result of the Defendant's breach of contract, Enbridge has suffered damages in an amount that is within the jurisdictional limits of this Court.

## V.

## ATTORNEY'S FEES

25. Enbridge has made demand upon International Paper for payment of the amounts due but International Paper has failed and refused to pay. Because of International Paper's breach of the contract, it has been necessary for Enbridge to retain the law firm of Dylewski & Douglass, P.C., Houston, Texas, to prosecute this suit. Enbridge has promised to pay Dylewski & Douglass, P.C. a reasonable attorney's fee for their services through trial of the case and any appeal to the Court of Appeals and/or Texas Supreme Court. Under §38.001 of Texas Civil Practices & Remedies Code, or alternatively §134.005, and other applicable laws, Enbridge is entitled to recover its reasonable attorney's fees and court costs.

## VI.

## EXEMPLARY DAMAGES

26. International Paper's actions were the result of fraud, malice or willful acts. Accordingly, Enbridge seeks an award of punitive or exemplary damages as permitted under Texas law. Further, Enbridge would show that International Paper's actions were committed knowingly or intentionally thus precluding the application of the limitation of recovery specified in VTCA Civil Practice and Remedies Code § 41.008. International Paper's actions also constitute theft which eliminates the application of the limitations on punitive damages.

## VII.

## JURY DEMAND

27.  Plaintiff Enbridge Pipe Lines (East Texas), L.P. demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Enbridge Pipelines (East Texas), L.P., requests that Defendant International Paper Company be cited to appear and answer, and that upon final trial Enbridge Pipe Lines (East Texas), L.P. have and recover judgment as follows:

- a.  Judgment against the Defendant for common law fraud in an amount equal to Enbridge's actual damages and exemplary damages;

- b.  Judgment against the Defendant for conversion in an amount to be shown by evidence presented at trial and exemplary damages;

- c.  Judgment against the Defendant for unjust enrichment in an amount to be shown by evidence presented at trial;

- d.  Judgment against the Defendant for theft in an amount to be shown by evidence presented at trial, together with exemplary damages;

- e.  Judgment against the Defendant for breach of contract in an amount to be shown by evidence presented at trial, together with reasonable attorneys fees;

- f.  Judgment against the Defendant for pre-judgment and post-judgment interest at the highest lawful rate as, and when, allowed by law;

- g.  Judgment against the Defendant for all costs of Court and expenses, including expert witness fees, herein incurred; and

- h.  Such other and further relief, general or special, at law or in equity to which Enbridge may be justly entitled.

Respectfully submitted,

By: _____
DENNIS M. DYLEWSKI
TSB #06325750; SDID #493
MICHAEL A. THOMPSON
TSB 24027919; SDID #30859

OF COUNSEL:

DYLEWSKI & DOUGLASS, P.C.
Two Houston Center
909 Fannin, Suite 3750
Houston, Texas 77010
(713) 751-0077 (Telephone)
(713) 751-0080 (Telecopy)